**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION**

| | | |
|---|---|---|
| Ana Lucia Parco Pinduisaca, | ) | |
| | ) | **ORDER GRANTING PETITION FOR** |
| Petitioner, | ) | **WRIT OF HABEAS CORPUS** |
| | ) | |
| v. | ) | |
| | ) | Case No. 3:26-cv-80 |
| Andrew Schneider, et al., | ) | |
| | ) | |
| Respondents. | ) | |

Petitioner Ana Lucia Parco Pinduisaca petitions for a writ of habeas corpus. Doc. 1. Respondents oppose the Petition. Doc. 2. Petitioner replied. Doc. 3. Respondents move to strike portions of Petitioner's reply, arguing it improperly raises new factual allegations and arguments. Doc. 5. For the reasons below, the Court grants the Petition and orders Respondents to grant Petitioner a bond hearing. Respondents' motion to strike is moot.

**I.      BACKGROUND**

Petitioner is a native and citizen of Ecuador who entered the United States in April 2024. Doc. 1 at 3. The Department of Homeland Security ("DHS") detained her upon entry, placed her in removal proceedings under § 240 of the Immigration and Nationality Act ("INA"), and charged her under INA § 212(a)(6)(A)(i). Id. DHS later released Petitioner on her own recognizance under INA § 236. Id. The order states:

> You have been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following conditions.

Doc. 1-2. Section 236 of the INA corresponds to 8 U.S.C. § 1226. The conditions required Petitioner to "report for any hearing or interview as directed by [DHS] or the Executive Office for Immigration Review"; "surrender for removal from the United States if so ordered"; report in

person to a deportation officer; refrain from changing her residence without written permission from DHS; refrain from violating any laws or ordinances; and assist DHS in obtaining any necessary travel documents. Id.

After her release, Petitioner remained at liberty for nearly two years while her removal proceedings were pending. Doc. 1 at 3-4. Regarding her immigration check-ins while on release, her Form I-213 states:

> On January 15, 2025, [Petitioner] reported to ICE/ERO Grand Forks, North Dakota as instructed . . . [Petitioner] was instructed to report again to ICE/ERO Grand Forks, North Dakota on February 03, 2025. [Petitioner] failed to report and is not in compliance with her conditions of release from immigration custody.

Doc. 1-5. The Form I-213 states she has no criminal history. Id.

On February 20, 2026, Border Patrol Agents stopped Petitioner's vehicle in East Grand Forks, Minnesota. Doc. 1 at 4. She was re-detained and transported to the Grand Forks County Correctional Center in Grand Forks, North Dakota. Id. On March 11, 2026, Petitioner appeared before an immigration judge for a custody redetermination hearing. Id. At the hearing, Petitioner stated she believed she complied with her reporting requirements "because she went twice and was not given a new appointment on the sign-in sheet after her second visit." Id. The immigration judge did not resolve that dispute. Instead, the judge denied release because "[r]espondent is subject to Matter of Q Li, 29 I&N Dec.66 (BIA 2025) and is thus ineligible for release on bond." Doc. 1-4 at 2. Since then, Petitioner has remained in custody.[1]

Petitioner filed this Petition on March 20, 2026. Doc. 1. She asserts her detention is unlawful because it violates the Due Process Clause of the Fifth Amendment and the Immigration

---

[1] Respondents note that Petitioner has since been "transferred to Kandiyohi Co. Jail in Willmar, MN for operational reasons relating to facility capacity." Doc. 5 at 3-4. But Respondents "do not intend to contest this Court's 28 U.S.C. § 2241 jurisdiction based on the transfer of Petitioner to a different District." Id.

and Nationality Act. Id. at 5, 11. In addition to other forms of relief, she requests immediate release from detention or a bond hearing. Id. at 15. Respondents oppose the Petition. Doc. 2. Petitioner replied. Doc. 3. Respondents then moved to strike portions of Petitioner's reply, arguing it improperly raises new factual allegations and arguments. Doc. 5. Petitioner opposes the motion to strike. Doc. 6. Respondents replied (Doc. 7) and Petitioner filed a sur-reply (Doc. 8-1).

Meanwhile, on April 27, 2026, a merits hearing was held on Petitioner's removal proceedings. Doc. 6 at 1. The immigration judge ordered Petitioner removed. Id. at 4. Petitioner appealed the immigration judge's decision. Doc. 6-1. The appeal remains pending. Doc. 6 at 2.

## II.    DISCUSSION

### A.    Motion to Strike

The Court first addresses Respondents motion to strike "new factual allegations and arguments improperly raised by [Petitioner] on reply." Doc. 5 at 1. Respondents seek "to have stricken Petitioner's allegations, arguments, and the exhibit . . . relating to II.C of the Reply, 'Petitioner's Status as a Crime Victim with PTSD Reinforces the Constitutional Need for an Individualized Determination.'" Id. Petitioner argues the contested allegations are "responsive to specific arguments the [Respondents] advanced" and the evidence could not have been included with the Petition. Doc. 6 at 1. There is further argument contained in Respondents' reply to the motion to strike (Doc. 7) and Petitioner's sur-reply (Doc. 8-1). The Court finds that the motion to strike is moot. As is described below, the Court grants Petitioner's habeas claim independent of arguments and evidence about Petitioner's psychological evaluation, her "Status as a Crime Victim," or the possibility of a U-Visa.

### B.      Due Process

A district court may provide habeas relief to a person detained in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). That authority includes jurisdiction to hear habeas challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001). The burden is on Petitioner to prove illegal detention. 28 U.S.C. § 2241(c)(3); Walker v. Johnston, 312 U.S. 275, 286 (1941). Petitioner's arguments raise two questions: whether she is entitled to a bond hearing on either statutory or constitutional grounds. Because the Court finds that Petitioner's detention violates her right to procedural due process, it need not address Petitioner's statutory claim.[2]

Petitioner argues that Respondents violated her due process rights when they re-detained her nearly two years after releasing her on her own recognizance "without any neutral adjudicator ever making an individualized finding that her detention is necessary." Doc. 1 at 11. She contends that the immigration judge "denied bond on the sole basis of a categorical legal conclusion that Matter of Q. Li rendered her ineligible for release." Id. Respondents counter that because Petitioner "is lawfully detained under 8 U.S.C. § 1225(b)(2)" and the statute does not provide for a bond hearing, that she cannot succeed on her claim that her detention violates the Due Process Clause. Doc. 2 at 11. The Court disagrees. Assuming that § 1225(b)(2) properly applies to Petitioner,[3] the provision is unconstitutional as applied to her.

---

[2] The Court agrees with Respondents that Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026), is a binding decision on this Court. See Doc. 2 at 8-10. However, it does not mandate a decision in favor of Respondents here. Avila addressed the statutory interpretation question, not the question of whether mandatory detention under § 1225(b)(2) may violate a noncitizen's due process rights.
[3] Respondents treat Avila as foreclosing Petitioner's statutory claim. But there are factual differences between Petitioner's claim and Avila, namely, that Petitioner was apprehended at the border and released under INA § 236, whereas the Avila petitioner entered the country without inspection and was detained by DHS for the first time in late 2025. The Court finds that Petitioner's

To support their argument that Petitioner, as an "applicant for admission," cannot be entitled to any process beyond that which § 1225(b)(2) provides, Respondents rely on Department of Homeland Security v. Thuraissigiam, 591 U.S. 103 (2020). Id. But Thuraissigiam considered whether a noncitizen detained just inside the border, and continuously detained thereafter, had a due process right to obtain habeas review of his asylum claim; it did not address a due process challenge to re-detention following a lengthy period of release in the United States. Although the political branches enjoy nearly plenary authority to set the procedures for "determining whether an alien should be admitted" when "at the threshold of initial entry," id. at 107, 139, it has long been recognized that those who have crossed that threshold have greater constitutional protections. See Zadvydas, 533 U.S. at 693-94 (collecting cases). Petitioner—who remained on release in the United States for nearly two years—has greater due process protections than those initially arriving in the United States. Thuraissigiam does not preclude Petitioner's due process claim. The Court now turns to the merits of Petitioner's procedural due process claim.

The Due Process clause applies to aliens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. To determine whether a civil detention violates a detainee's due process rights, courts apply the test in Mathews v. Eldrige, 424 U.S. 319, 335 (1976). Courts consider the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 335.

---

detention is unlawful on constitutional grounds and assumes without deciding that Petitioner falls within the category of noncitizens who are subject to § 1225(b)(2)'s detention regime under Avila.

Respondents argue a Mathews analysis is not applicable here because in Banyee v. Garland the Eighth Circuit Court of Appeals "expressly rejected the type of Mathews balancing test Petitioner now proposes." Doc. 2 at 13 (citing Banyee v. Garland, 115 F.4th 928 (8th Cir. 2024)). In that case, the Eighth Circuit pointed to Supreme Court authority in Demore v. Kim and Zadvydas, finding they "leave no room for a multi-factor 'reasonableness' test." Banyee, 115 F.4th at 933.

The Court disagrees with Respondents' argument. Banyee analyzed the detention of a noncitizen under 8 U.S.C. § 1226(c) who was convicted of "theft, lying to the police . . . possessing marijuana and drug paraphernalia . . . [and] robbery with a dangerous weapon". Id. at 930. Demore v. Kim similarly analyzed the detention of a noncitizen under 8 U.S.C. § 1226(c) with a criminal record involving theft and first-degree burglary. Demore v. Kim, 538 U.S. 510, 523 (2003). These authorities are distinguishable from Petitioner's case.[4] Besides the detention being based on a different statutory section, the respondents in those cases demonstrated the petitioners were a danger or flight risk based on their criminal convictions. As the following Mathews analysis will reveal, that is not the case here.

The first Mathews factor requires consideration of the private interest affected by the official action. Mathews, 424 U.S. at 335. "Freedom of imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty clause that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690; see also Foucha v. Louisiana, 504 U.S. 71,

---

[4] Some courts disagree and hold that a Mathews analysis is unwarranted in cases like Petitioner's. Compare Mejia v. Gardner, No. C26-64-LTS-MAR, 2026 WL 1557466, at *3 (N.D. Iowa June 2, 2026) (declining to apply Mathews factors), and Leiva v. Berg, No. 4:26-cv-3023, 2026 WL 948430, at *4 (same) with Milton A. v. Brott, No. 26-cv-2580, 2026 BL 197185, at *3-4 (D. Minn. May 28, 2026) (applying Mathews factors), and Abbas v. Schneider, No. 26-cv-132, 2026 WL 1079292, at *7 (same). The proper framework for evaluating Petitioner's claim is not well settled.

6

80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."). Petitioner has resided in the United States for nearly two years. Doc. 1 at 4. She has complied with the law. Id. at 3. The Court finds that Petitioner has a strong liberty interest in her freedom from detention. See Lopez Miranda v. Flores, No. 25-cv-584, 2025 WL 3901908, at *3 (W.D. Tex. Dec. 10, 2025) ("[N]oncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status.").

Petitioner's liberty interest is further strengthened by the fact that, in 2024, Respondents released her from detention on her own recognizance. Doc. 1 at 3. "As ICE was not authorized to release [Petitioner] if [she] was a danger to the community or a flight risk, the Court must infer from [the] release that ICE determined [she] was neither." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Respondents appear to contend there are changed circumstances for Petitioner's re-detention, namely that she "failed to report to ICE/ERO in Grand Forks, ND on February 3, 2025, as directed" and was thus in violation of her terms of release. Doc. 2 at 8. But the judge at Petitioner's bond hearing did not determine she was a danger or flight risk based on the facts Respondents allege. Instead, the judge denied bond because Petitioner was "subject to Matter of Q Li, 29 I&N Dec.66 (BIA 2025) and is thus ineligible for release . . . ." Doc. 1-4. See Alvarez-Rico v. Noem, 4:26-cv-00729, 2026 WL 522322, at *3, 5-6 (S.D. Tex. Feb. 25, 2026) (finding that re-detention of a noncitizen who was released on his own recognizance violated due process when the custody redetermination hearing did not deny bond on the merits but instead denied bond under Matter of Q. Li); Shilu v. Warden, No. 3:26-cv-01275-rbm-bjw, 2026 WL 926900, at *2-3 (S.D. Cal. April 3, 2026) (same). The first Mathews factor weighs in Petitioner's favor.

7

The second <u>Mathews</u> factor asks whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks. <u>Mathews</u>, 424 U.S. at 335. This factor also weighs in favor of Petitioner. Civil immigration detention must be "nonpunitive in purpose" and bear a "reasonable relation" to the authorized statutory purposes of preventing flight and danger to the community. <u>Zadvydas</u>, 533 U.S. at 690. Respondents previously determined that Petitioner did not pose a threat, releasing her into the United States on her own recognizance under INA § 236. Absent a pre-detention hearing to determine—as Respondents appear to allege—that her circumstances have changed such that she is now a danger or flight risk when Respondents previously determined she was neither, the risk of erroneous deprivation of Petitioner's liberty interest is obvious. Respondents' contention that Petitioner has already been afforded a custody redetermination hearing is unpersuasive. As described above, no adjudicator determined whether Petitioner is a danger to the community or a flight risk. Instead, the judge categorically denied bond based on "Matter of Q Li, 29 I&N Dec.66 (BIA 2025)." Doc. 1-4 at 2.

To counter the risk of erroneous deprivation, a constitutionally adequate bond hearing is appropriate. <u>See</u> <u>Muse v. Mullin</u>, No. 3:26-cv-4024-CJW, 2026 WL 1008532, at *5 (N.D. Iowa April 14, 2026) ("Thus, the Court finds that respondents must provide petitioner with a bond hearing. At the hearing, the government will bear the burden to demonstrate dangerousness or flight risk.") (citations omitted); <u>Ramirez-Mendez v. Olson</u>, No. 26-17-DLB, 2026 WL 907576, at *4 (E.D. Ky. April 2, 2026) (holding that a custody redetermination hearing countered the risk of erroneous deprivation of petitioner's rights); <u>Alvarez-Rico v. Noem</u>, No. 4:26-cv-729, 2026 WL 522322, at *6 (S.D. Tex. Feb. 25, 2026) ("Absent some sort of pre-detention hearing to determine whether his circumstances have changed such that he now presents a danger or a flight risk when

the government previously determined that he presented neither, the risk of erroneous deprivation of [the petitioner's] liberty interest is obvious."). At the hearing, Respondents must prove by clear and convincing evidence that Petitioner's continued detention is warranted based on dangerousness or flight risk. See Muse, 2026 WL 1008532, at *5; Dambreville v. Noem, No. 4:25-cv-00514-SMR-SBJ, 2026 WL 602174, at *5 (S.D. Iowa Jan. 12, 2026) ("The Court therefore orders that at the bond hearing, the Government must prove by clear and convincing evidence that Petitioner's continued detention is warranted based on flight risk or dangerousness. This allocation reflects settled practice in redetention cases."). This is so because "[w]hen the government seeks to continue detaining someone it previously released, fairness demands that the [g]overnment shoulder the burden of justifying that detention." Id.

Third, the Court recognizes that Respondents have a legitimate interest in ensuring that noncitizens appear for removal hearings and do not pose a danger to the community. But here, Respondents' interest in detaining Petitioner is low because there has been no determination that Petitioner is a threat to the community or is unlike to appear. See Alvarez-Rico, No. 4:26-cv-729, 2026 WL 522322, at *6 (granting habeas petition in part because there was no determination made that petitioner was a danger or flight risk). Respondents previously determined Petitioner was not a danger when they granted her parole. Although they may allege grounds for re-detaining her, a constitutionally adequate bond hearing will allow Respondents to plead their case. Azalyar v. Raycraft, 814 F. Supp. 3d 926, 935 (S.D. Ohio Jan. 2, 2026) (holding that a bond hearing does not impede respondents' interests). Nor is there a risk that requiring a bond hearing will impose more than a minimal cost. Id. (citing Singh v. Andrews, No. 25-cv-801, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025)). More, that Petitioner's alleged violation—a missed appointment on February 3, 2025—occurred more than a year before it was acted upon on February 20, 2026, undermines

9

any suggestion that Respondents' interests must be satisfied immediately or that the cost of procedural safeguards would be insurmountable. The Court concludes that Respondents' interests do not outweigh Petitioner's liberty interest, especially when a mechanism exists to safeguard due process.

## III.  CONCLUSION

The Court has reviewed the record, the parties' filings, and the relevant case law. Petitioner's petition for writ of habeas corpus (Doc. 1) is **GRANTED**. Respondents are **ENJOINED** from detaining Petitioner unless she is provided with a bond hearing within seven calendar days of the filing date of this Order. At the bond hearing, Respondents must prove by clear and convincing evidence that Petitioner's continued detention is warranted based on flight risk or dangerousness. Respondents' motion to strike (Doc. 5) is **MOOT**.

**IT IS SO ORDERED**.

Dated this 3rd day of August, 2026.

/s/ Peter D. Welte
Peter D. Welte, Chief Judge
United States District Court

10